IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Antoine Guy Jean Paul Bordelais,<br><br>    Plaintiff,<br><br>v.<br><br>Maria E. J. Kuhn, Kuhn Counseling Center P.C.,<br><br>    Defendants. | No. 19 CV 8348<br><br>Honorable Nancy L. Maldonado |

## MEMORANDUM OPINION & ORDER

Pro se Plaintiff Antoine Guy Jean Paul Bordelais[1] brings this lawsuit against Defendants Maria E. J. Kuhn and Kuhn Counseling Center, P.C. (collectively referred to as "Kuhn"), relating to Kuhn's provision of therapy to Mr. Bordelais's daughter when she was a minor. Before the Court is Kuhn's motion to dismiss Mr. Bordelais's complaint in its entirety (Dkt. 49.), Mr. Bordelais's "Motion for Disclosure" in which he seeks access to his daughter's medical records (Dkt. 51.), and his motion to add a party to the proceedings. (Dkt. 92.) For the following reasons, Kuhn's motion to dismiss is granted in its entirety and Mr. Bordelais's motion for disclosure and motion to add a party are denied. Mr. Bordelais's present complaint is his second attempt to assert these claims. Finding that any further amendment would be futile, the Court dismisses his claims with prejudice. Civil case terminated.

---

[1] Bordelais is subject to an order issued by the Executive Committee of this Court, which prevents him from filing any new civil action or proceeding without leave of Court due to numerous prior filings, many of which were dismissed for failure to state a claim or as duplicative of other cases. *In the Matter of Antoine Guy Jean Paul Bordelais*, 20 CV 4165, Dkt. No. 1. This Executive Committee order is dated July 15, 2020, and does not apply to cases that were already pending, such as the instant lawsuit.

1

## Background[2]

Mr. Bordelais filed an Amended Complaint[3] on August 27, 2021, alleging the following claims on his own behalf: (1) medical malpractice, including claims of failure to obtain parental consent, failure to inform, "intentional misdiagnosis," "wrongful treatment," and "failure to inform of the consequences of the procedure" (Count I); (2) conspiracy to cause prejudice to him (Count II); (3) defamation (Count III); (4) intentionally inflicting emotional distress (Count IV); (5) negligently inflicting emotional distress (Count V); and (6) respondeat superior.[4] Mr. Bordelais also alleged the following claims on behalf of his daughter, who was a minor at the time he filed the Amended Complaint: (1) intentionally inflicting emotional distress (Count VI); and (2) negligently inflicting emotional distress (Count VII) . (Dkt. 40.) The parties have since confirmed that Mr. Bordelais's daughter turned 18 years old in November 2021. (Dkt. 82.)

To support these claims, Mr. Bordelais alleges the following facts, which the Court must accept as true for the limited purposes of ruling on the motion to dismiss. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). Mr. Bordelais is a citizen of France; Kuhn, the individual defendant, resides in Batavia, Illinois; and Kuhn Counseling Center is a U.S. entity with its principal place of business in Illinois. (Dkt. 40 ¶¶ 3, 7, 8.) In 1999, Mr. Bordelais married Valerie Ann Bordelais (née Stilwell) in France and in late 2003, they had a daughter. (*Id.* ¶ 9.) On June 23, 2016, Mrs. Bordelais removed their daughter from Switzerland to Naperville, Illinois, which Mr. Bordelais alleges was "wrongful[]" and an "[a]bduction." (*Id.* ¶ 10.) Mr. Bordelais

---

[2] In citations to the record, page numbers are taken from the CM/ECF headers.
[3] The Court granted Kuhn's motion to dismiss Mr. Bordelais's initial Complaint and for summary judgment on July 29, 2021. (Dkt. 39.) The Court granted Mr. Bordelais leave to file an amended complaint, which is the subject of the instant motion to dismiss.
[4] Mr. Bordelais did not plead a separate count for a claim based on respondeat superior, but he references respondeat superior elsewhere in his complaint. (*See* Dkt. 40 ¶¶ 18– 0.) Since Mr. Bordelais is pro se and the Court must construe his complaint liberally, the Court construes his complaint as asserting a claim based on respondeat superior liability. *See Parker v. Four Seasons Hotels, Ltd*., 845 F.3d 807, 811 (7th Cir. 2017) ("A trial court is obligated to liberally construe a pro se plaintiff's pleadings.") (citations omitted).

alleges that in a decision dated April 19, 2017, a "Swiss appeal court determined that the abduction was wrongful on the grounds that [Mr. Bordelais] held joint parental authority and did not consent to the move of the child."[5] (*Id.* ¶ 11.) Mr. Bordelais further alleges that the Swiss Court granted him "1 unsupervised Skype visitation with his daughter." (Dkt. 40 ¶ 13.)

Mr. Bordelais alleges that "[b]y marriage [he] ha[d] full parental authority" over his daughter when she was a minor, "including legal authority to make health care decisions on his daughter's behalf." (*Id.* ¶ 12.) Mr. Bordelais further alleges that "[t]here are no U.S. court decisions to the contrary." (*Id.*) In order to maintain remote contact with his daughter, Mr. Bordelais contacted Kuhn. (*Id.* ¶ 14.) However, Mr. Bordelais alleges that "[i]t quickly became apparent that [Kuhn] did not meet the requirements for an independent and competent therapist." (*Id.*) Mr. Bordelais therefore advised Kuhn "that their services would not be required." (*Id.*) Despite Mr. Bordelais's objections, Kuhn provided therapy to Mr. Bordelais's daughter through a "mandate" from Mrs. Bordelais, which the Court interprets to mean that Mrs. Bordelais allowed Kuhn to provide therapy to their daughter. (*Id.* ¶ 15.) Kuhn was aware that "the abduction," which is how Mr. Bordelais describes his daughter's removal from Switzerland to Illinois, "was traumatic for the child," as their records reflect. (*Id.* ¶ 17.) Mr. and Mrs. Bordelais's daughter was less than 16 years old when she was first in contact with Kuhn and remained a minor when Mr. Bordelais filed the instant Complaint. (*Id.* ¶ 16.) Kuhn argues that these facts as alleged by Mr. Bordelais are not sufficient to state any of the claims in his Amended Complaint and brings the instant motion to

---

[5] Mr. Bordelais did not attach any Swiss court decisions to his Amended Complaint. He, however, attached a Swiss court decision to his response to the motion to dismiss, but the attachment is largely in French, with only an introductory paragraph and an additional two lines translated into English. (Dkt. 75 at 19–22.) The substantive sentence in English states, "Let Antoine Bordelais exercise his visitation rights with regard to the child [redacted] for two hours every two weeks through Skype." (*Id.* at 21.)

3

dismiss under Fed. R. Civ. P. 12(b)(6). The Court provides the general legal standard and then addresses each claim in turn.

## Legal Standard

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When considering a motion to dismiss, "[a] trial court is obligated to liberally construe a *pro se* plaintiff's pleadings." *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d at 811 (citations omitted); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). While the Court accepts as true all factual statements in the complaint, the Court does not accept legal conclusions alleged as true. *Iqbal*, 566 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Court applies Illinois's choice of law standard given that Mr. Bordelais filed this case in Illinois. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law."). The Court finds that Illinois law applies because Illinois has the most significant relationship to the events alleged and the parties. *See Boogaard v. Nat'l Hockey League*, 255 F. Supp. 3d 753, 759 (N.D. Ill. 2017) (noting that in Illinois, "the law of the State that has the most significant relationship to the occurrence and the parties applies.") (citation and internal quotation marks omitted).

### A. Claims Alleged as to Mr. Bordelais's Daughter

Although Mr. Bordelais's Amended Complaint pled claims on behalf of his daughter Sophie Bordelais when she was a minor, she is now an adult and has unequivocally expressed she has no intention of participating in this lawsuit. Mr. Bordelais cannot press claims on behalf of Ms. Bordelais now that she is a legal adult and can pursue any such claims on her own. *See* 735 ILCS 5/13-211(a). In addition, Sophie Bordelais has appeared through counsel, who provided the Court with a letter expressing that she does not wish to participate in this lawsuit and that she "disavow[s] the allegations of the amended complaint." (Dkts. 83, 94, 95.)[6] Counts VI, VII, and I (to the extent Mr. Bordelais intended to invoke his daughter's rights) are therefore dismissed. The Court addresses Mr. Bordelais's remaining claims only as they pertain to him as the sole plaintiff.

### B. Medical Malpractice Claim

Mr. Bordelais brings a claim that he labels generally as "medical malpractice in care of [his daughter] (minor child)." (Dkt. 40 at 3.) He asserts this claim under 735 ILCS 5/2-622 and alleges that Kuhn provided therapy to his daughter when she was a minor without his consent. He also alleges that Kuhn owed him a legal duty of care in the treatment of his daughter when she was a minor and that Kuhn breached this duty by failing to obtain his consent and continuing to provide therapy with knowledge that he did not consent.

As a threshold matter, in light of the many documents the parties attached to their briefing, the Court must clarify what documents it will consider when ruling on the motion to dismiss Mr. Bordelais's medical malpractice claim. Kuhn requests that the Court take judicial notice of a translated "pronouncement" of the Chairperson of the District Court of La Cote, Nyon,

---

[6] Mr. Bordelais has attempted to challenge the contents of the letter his daughter's counsel submitted on her behalf on the belief that Mrs. Bordelais prevented his daughter from learning of this case. (Dkts. 85, 87.) The Court rejected his assertions as speculative and heard arguments on his motion for reconsideration, including from his daughter's counsel, who attended the hearing. (*See* Dkts. 86, 93.) The Court accepts Sophie Bordelais's representation through counsel that she has received notice of this lawsuit and does not wish to participate in any way.

Switzerland, in the case "Plaintiff v. Valerie Stilwell (Bordelais)" dated July 25, 2016 ("the July 25, 2016, Pronouncement"). Kuhn attached this document to its motion to dismiss. (Dkt. 50 at 25–91.)[7] Kuhn also requests that the Court take judicial notice of a divorce action commenced by Mrs. Bordelais in the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois ("State Court Divorce Action"), which was later consolidated with a divorce action filed by Mr. Bordelais. In particular, Kuhn attached an order from the State Court Divorce Action, which states, "The parties agree to Kuhn Counseling Center being appointed as Supervisor for the court ordered visitation subject to" terms that this Court is unable to decipher in the handwritten court order. (Dkt. 50 at 134.) Mr. Bordelais also attached several documents to his response to the motion to dismiss, including court orders and a petition for declaratory judgment in the State Court Divorce Action, a letter from what appears to be a Swiss government office, and a Swiss Civil Court of Appeal judgment dated April 19, 2017, which is largely in French. (Dkt. 75.)

When considering a Rule 12(b)(6) motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine . . ., in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "Courts may take judicial notice of . . . matters of public record when the accuracy of those documents reasonably cannot be questioned." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017); *see* Fed. R. Evid. 201(b). If a party requests the Court to take judicial notice of a document or facts,

---

[7] As Mr. Bordelais noted, Kuhn initially provided this document without any certificate by a translator certifying the accuracy of the translation from its original French into English. The Court subsequently ordered Kuhn to provide a translation of the July 25, 2016, Pronouncement "into English with a sworn verification from a professional translator attesting that the translated judgment is a true and accurate translation of the Pronouncement." (Dkt. 89.) Kuhn accordingly filed: (1) the original July 25, 2016, Pronouncement written in French; (2) a copy of the July 25, 2016, Pronouncement translated into English; and (3) a Certificate of Accuracy, signed by Persida Louison, Translator/Interpreter. (Dkt. 91.)

6

as Kuhn has done here, the Court must take judicial notice if "the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

Here, the Court takes judicial notice of the July 25, 2016, Pronouncement, and specifically its statement attributing exclusive parental authority and custody to Mrs. Bordelais, as well as notice of the State Court Divorce Action. Fed. R. Evid. 201. "An American court can take judicial notice of a foreign judgment," although "[t]he significance of a foreign judgment for pending litigation depends obviously on its meaning, which will require an accurate translation if . . . the judgment was rendered by a court in a non-English-speaking country." *Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 696 (7th Cir. 2009). In light of the Certificate of Accuracy signed by the translator/interpreter (Dkt. 91-3 at 2), the Court specifically takes judicial notice of the July 25, 2016, Pronouncement's ruling that "[a]ttributes parental authority and custody over child [redacted] Bordelais exclusively to her mother Valérie Bordelais." (Dkt. 91-2 at 62.)

In addition, the Court takes judicial notice of the State Court Divorce Action, which bears on whether Mr. Bordelais has stated a claim for medical malpractice and failure to obtain parental consent. The Court also takes notice of the order from the State Court Divorce Action providing that Kuhn was appointed by agreement to supervise court-ordered visitation. The Court finds that these facts—that there was a State Court Divorce Action and this action appointed Kuhn—are matters of public record and the accuracy of these facts cannot reasonably be questioned.

On to the substance, the Court finds that Mr. Bordelais fails to plead sufficient facts to support his claim that Kuhn provided therapy to his daughter without his consent. To start, there is no allegation that Kuhn needed his consent to provide therapy to his daughter under Illinois law. Under the Illinois Marriage and Dissolution of Marriage Act, a state court "that is competent to

7

allocate parental responsibilities has jurisdiction to make such an allocation." 750 ILCS 5/601.2(a). The Act states, "Unless the parents otherwise agree in writing on an allocation of significant decision-making responsibilities . . . the court shall make the determination" and "allocate to one or both of the parents the significant decision-making responsibility for each significant issue affecting the child," including health decisions. 750 ILCS 5/602.5. Mr. Bordelais alleges that he had "full parental authority" over his daughter "[b]y marriage," and that "[t]here are no U.S. court decisions to the contrary." (Dkt. 40 ¶ 12.) He further alleges that a Swiss court granted him visitation with his daughter. (*Id.* ¶ 13.) But Mr. Bordelais fails to plead that either a court allocated him the responsibility to make health decisions for his daughter or that there was any written agreement between him and Mrs. Bordelais granting him that responsibility. And, there is nothing in the filings of the State Court Divorce Action, of which the Court takes judicial notice, that suggests Mr. Bordelais retained healthcare decision-making authority. Indeed, the July 25, 2016, Pronouncement from the Swiss court, of which the Court takes judicial notice, attributes parental authority *exclusively* to Mrs. Bordelais. (Dkt. 91-2 at 62.) Thus, Mr. Bordelais has failed to plead that any court granted him significant decision-making responsibilities for his daughter, and to the contrary, there is a court order affirmatively attributing exclusive parental authority to Mrs. Bordelais. Mr. Bordelais fails to state a claim.

The Court dismisses Mr. Bordelais's claim for malpractice for failing to obtain parental consent with prejudice on the grounds of futility and because he was given an opportunity to cure this deficiency and failed. Based on the July 25, 2016, Pronouncement, Mrs. Bordelais had exclusive parental authority over their daughter. (Dkt. 91-2 at 62.) The Court, therefore, will not grant Mr. Bordelais leave to file a second amended complaint because "it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Barry Aviation*

*Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). This Order is also the second instance the Court has dismissed Mr. Bordelais's claim on the grounds that he "has not alleged that he had legal authority to make health care decisions on his daughter's behalf." (Dkt. 39 at 2.) Surely, if Mr. Bordelais *could* allege that a court granted him the authority to make healthcare decisions for his daughter, he would have done so by now. His claim is therefore dismissed with prejudice. *See Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1052–53 (7th Cir. 2019) ("There is a presumption that a plaintiff should have an opportunity to test a claim on the merits, but this presumption may be overcome if the court finds '. . . repeated failure to cure deficiencies by amendments previously allowed, . . . futility of the amendment, etc.'" (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962))).

The Court also finds that Mr. Bordelais fails to state a claim that Kuhn was "negligent in their treatment" of his daughter by "colluding" with Mrs. Bordelais "to further manipulate the child and alienate her from [Mr. Bordelais] worsening her suffering."[8] (Dkt. 40 ¶ 43.) A negligence action for medical malpractice requires, "a duty owed by the defendant to the plaintiff, a breach of duty, an injury proximately caused by the breach, and resultant damages." *Gillespie v. Univ. of Chi. Hosps.*, 900 N.E.2d 737, 740 (Ill. App. Ct. 2008). "[T]he duty of due care owed by a health care professional runs only to the patient, and not to third parties." *Doe v. McKay*, 700 N.E.2d 1018, 1022 (Ill. 1998). Here, Mr. Bordelais does not plead that he was a patient of Kuhn. Thus, the Court cannot draw a reasonable inference that Kuhn owed any duty of care to him. Mr. Bordelais therefore fails to plead sufficient facts to support his medical malpractice claim,

---

[8] Elsewhere in his medical malpractice claim, Mr. Bordelais references Kuhn's "intentional" actions, which he alleges caused him harm. (*See* Dkt. 40 at 4 (labeling a claim "Intentional misdiagnosis" and alleging that Kuhn "intentionally provided misleading information in their diagnostic report").) Malpractice is generally "a negligence theory of recovery" under Illinois law. *Dahlin v. Jenner & Block, L.L.C.*, No. 01 C 1725, 2001 WL 855419, at *8 (N.D. Ill. July 26, 2001) (citing *Horak v. Biris*, 474 N.E.2d 13, 17 (Ill. App. Ct. 1985)). The Court knows of no cause of action for intentional medical malpractice and thus construes Mr. Bordelais's claim as a negligence action.

including his claims for "intentional misdiagnosis," "wrongful treatment," and "failure to inform of the consequences of the procedure." (Dkt. 40 at 3–5.)

Under his medical malpractice claim, Mr. Bordelais also alleges that Kuhn failed to inform him "of the fact that [Mrs. Bordelais] was seeking to mandate them, of the therapy being provided to [Mr. Bordelais's daughter] and of [Mr. Bordelais's daughter]'s condition." (Dkt. 40 ¶ 31.) Under the Illinois Mental Health and Developmental Disabilities Confidentiality Act ("the Confidentiality Act"), records and communications made or created in the course of providing mental health or developmental disabilities services are "confidential and shall not be disclosed except as provided in this Act." 740 ILCS 110/3(a); *see also In re Marriage of Wendy W. and James W.*, 202 N.E.3d 1034, 1045 (Ill. App. Ct. 2022) ("Anyone seeking the nonconsensual release of mental health information faces a formidable challenge, and exceptions to the Confidentiality Act are very narrow.") (citations and quotation marks omitted). Under the Confidentiality Act, a parent or guardian of a person who is receiving or has received mental health services who is older than 12 but less than 18 years old is "entitled, upon request, to inspect and copy a recipient's record . . . if the recipient is informed and does not object or if the therapist does not find that there are compelling reasons for denying the access." 740 ILCS 110/4(a), (a)(3). A parent who is denied access "may petition a court for access to the record." 740 ILCS 110/4(a)(3).

Based on the allegations in Mr. Bordelais's Amended Complaint, Kuhn denied Mr. Bordelais access to his daughter's records, and he therefore petitioned the Court for access by filing this lawsuit. This provision recognizing parents' rights to request their child's records also states, "Nothing in this paragraph is intended to prohibit the parent or guardian of a recipient who is at least 12 but under 18 years from requesting and receiving the following information: current physical and mental condition, diagnosis, treatment needs, services provided, and services needed,

including medication, if any." 740 ILCS 110/4(a)(3). The Illinois Court of Appeals has interpreted this provision as entitling a parent "to request and receive the limited information specifically allowed under section 4(a)(3) about the child's current physical and mental condition, diagnosis, treatment needs, services provided, and services needed, including medication, if any." *In re Marriage of Wendy W.*, 202 N.E.3d at 1046 (noting, however, that courts may deny a parent access to information in a child's record that is beyond what the statute provides in section 4(a)(3)).

Here, Mr. Bordelais alleges that Kuhn failed to inform him of his daughter's condition, which was information he was entitled to under the Confidentiality Act when his daughter was older than 12 years old but younger than 18. Section 4(a)(3) of the Confidentiality Act, however, no longer applies because Mr. Bordelais's daughter is now an adult. While Mr. Bordelais had a right to pursue limited information under the Confidentiality Act about his daughter's then-current physical and mental condition when his daughter was older than 12 years old but under 18 years of age, his right to that information expired when his daughter turned 18 years old in November 2021. As an adult, his daughter's mental health records and communications "shall be confidential and shall not be disclosed except as provided" in the Confidentiality Act. 740 ILCS 110/3(a). Mr. Bordelais's claim against Kuhn for failure to inform is moot because the Court can no longer redress the injury Mr. Bordelais alleged. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout [the lawsuit's] existence.'") (citation omitted); *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010). Mr. Bordelais's claim for failure to inform therefore

must be dismissed with prejudice. For these reasons, Mr. Bordelais's medical malpractice claim is dismissed in its entirety.[9]

### C. Defamation

Mr. Bordelais brings a claim for defamation alleging that Kuhn has and continues "to intentionally defame [him] in front of [his daughter] and other third parties." (Dkt. 40 ¶ 57.) He does not allege what the defamatory statements were, but he alleges that his claim "is evidenced by the content of [Kuhn's] report dated June 26, 2018, in which [Kuhn] systematically defame[s] [him] by making false claims relating to [his] conduct with his minor child, most of them originating from [Mrs. Bordelais]." (*Id.* ¶ 58.) Yet, Mr. Bordelais does not attach the June 26, 2018, report with the allegedly defamatory statements or identify the allegedly defamatory statements specifically or allege to whom, when, or how they allegedly published, which is cause for dismissal on its own. To state a defamation claim, a plaintiff must plead: (1) a false statement by the defendant about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) that publication caused damages. *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006).

---

[9] The Court notes Mr. Bordelais's allegation that Kuhn "prevent[ed]" his daughter from having contact with him "mostly but not exclusively by Skype . . . in opposition of the child's clearly stated wishes." (Dkt. 40 ¶ 44.) The Court must consider Mr. Bordelais's Complaint as a whole and determines that Mr. Bordelais's claims all relate to Kuhn providing therapy to his daughter without his consent and the harm that he alleges occurred due to the provision of therapy. Mr. Bordelais does not clearly allege any violation of any court order regarding his rights when his daughter was a minor. Thus, the Court does not construe his Amended Complaint as alleging any such claims. Further, Mr. Bordelais's response to the motion to dismiss contains statements suggesting that his rights to any visitation were being resolved in the State Court Divorce Action. (Dkt. 75 ¶ 22.) The Court therefore need not consider any claims regarding Mr. Bordelais's past rights to visitation.
 Mr. Bordelais also pleads that Kuhn "failed in their duty to alert [him] and the relevant authorities of [Mrs. Bordelais's] abuse of [his] child." (Dkt. 40 ¶ 46.) While Illinois law requires therapists to report their reasonable belief "that a child known to them in their professional or official capacities may be an abused child or a neglected child," Mr. Bordelais has not pled any facts supporting any reasonable belief by Kuhn that his daughter was being abused or neglected by her mother. 325 ILCS 5/4(a). Further, Mr. Bordelais has not pled that there is a private right of action to pursue such a claim and the statute explicitly provides for criminal penalties. *See* 325 ILCS 5/4(m). Thus, the Court finds that he has not pled any plausible claims based on Kuhn's obligations as a mandated reporter.

In addition to the fatal pleading deficiencies, Mr. Bordelais has another problem with his defamation claim – the one-year statute of limitations. 735 ILCS 5/13-201. Mr. Bordelais fails to allege details of the defamatory publication, but if his theory is that the June 26, 2018 report was published to third parties on that date, any defamation claim based on the publication of that report should have been filed by June 26, 2019. Mr. Bordelais's original complaint (which contains no allegations of defamation) was filed beyond the one-year mark on December 20, 2019. (Dkt. 1.) Mr. Bordelais did not add any defamation claim, based on publication of the June 26, 2018, report, until he filed his Amended Complaint more than three years later on August 27, 2021. His claim is therefore time-barred by the one-year statute of limitations and dismissed. *See Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009) (noting that dismissal is appropriate where "it is clear from the face of the amended complaint that it is hopelessly time-barred.").

Regarding Mr. Bordelais's allegation that Kuhn has continued to make defamatory statements since the June 26, 2018, report "in front of [his daughter] and other third parties," the Court finds that he fails to state a claim for defamation. (Dkt. 40 ¶ 57.) Again, Mr. Bordelais pleads virtually no facts regarding the content of the allegedly defamatory statements, merely alleging that the statements "relat[ed] to [Mr. Bordelais's] conduct with his minor child." (Dkt. 40 ¶ 58.) He does not to point to any specific statement that he alleges was defamatory. By failing to plead any specific statements, he has left "the Court guessing as to what statements Defendants made," and failed to put Kuhn on notice of his claim. *Dorman v. Madison Cnty.*, No. 3:21-cv-1395-JPG, 2022 WL 874733, at *4 (N.D. Ill. March 24, 2022). His defamation claim is therefore dismissed.

### D. Intentional Infliction of Emotional Distress

Mr. Bordelais includes a claim for "Intentionally Inflicting [Mr. Bordelais] Emotional Tort," and states that Kuhn "never attempted to contact [him] nor involved him in his child's

13

therapy," and "promot[ed] [Mrs. Bordelais's] agenda of excluding [him] and his family from the minor child's life." (Dkt. 40 ¶ 61.) He further alleges that Kuhn's "conduct in falsifying reports and preventing a healthy father-daughter relationship was truly extreme, outrageous and beyond all bounds of decency."[10] (*Id.* ¶ 62.) The Court construes this claim as one for intentional infliction of emotional distress under Illinois law, which requires: (1) conduct that was "truly extreme and outrageous"; (2) that "the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress"; and (3) "the conduct must in fact cause severe emotional distress." *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). Under this cause of action, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. D, at 73 (1965); *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976)). Regarding the second element of intent, "[l]iability extends to situations in which there is a high degree of probability that severe emotional distress will follow and the actor goes ahead in conscious disregard of it." *Pub. Fin. Corp.*, 360 N.E.2d at 767.

Kuhn argues that Mr. Bordelais fails to plead conduct that is outrageous. Specifically, Kuhn argues that his allegation that Kuhn failed to contact him or involve him in his daughter's therapy was not outrageous because under 405 ILCS 5/3-550, Mr. Bordelais's daughter had a right to seek a certain amount of therapy without parental consent. The Court agrees that Mr. Bordelais fails to

---

[10] Regarding Mr. Bordelais's allegations that Kuhn falsified reports, the Court need not accept this conclusory allegation as true. *See Iqbal*, 566 U.S. at 678. Mr. Bordelais does not plead anything regarding the content of any reports (and indeed signed an affidavit that Kuhn never provided him documentation regarding his daughter's treatment). He pleads no allegations about how any reports were false. Thus, the Court focuses on whether Mr. Bordelais has stated a claim for intentional infliction of emotional distress based on the conduct Mr. Bordelais has pled with clarity (*i.e.*, that Kuhn provided therapy to his daughter and he did not consent).

14

plead outrageous conduct by alleging that Kuhn provided therapy to his daughter without his consent, given that he fails to plead that he had a right to make decisions for his daughter's healthcare and the law allowed her to seek therapy on her own.

Nor does Mr. Bordelais plead a scenario where Kuhn controlled him and abused any authority over him, which is relevant to the outrageous conduct analysis. Illinois courts have recognized outrageous conduct when the defendant has control over the plaintiff, "particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to the plaintiff's detriment." *McGrath v. Fahey*, 533 N.E.2d 806, 809–10 (Ill. 1988) (listing examples of individuals who may be positioned with this power as "police officers, school authorities, landlords and collecting creditors"). While Kuhn had a role in Mr. Bordelais's visitation of his daughter, Mr. Bordelais apparently ended that when he told Kuhn "that their services would not be required." (Dkt. 40 ¶ 14.) To the extent Mr. Bordelais attempts to plead that Kuhn abused any authority with respect to his visitation with his daughter, the Court does not find the conduct alleged to be outrageous to support this intentional tort. Mr. Bordelais does not plead that Kuhn had any control over *him* and also does not plead any threatening behavior or facts that support any abuse of authority. The Court thus finds that Mr. Bordelais fails to plead any outrageous conduct by Kuhn.

The Court further finds that Mr. Bordelais fails to plead that Kuhn acted with intent to cause severe emotional distress or knew there was a high probability that their actions would cause severe emotional distress. Mr. Bordelais alleges that Kuhn "as therapists . . . could not possibly ignore, or at least should have known, the grave consequences of their actions." (Dkt. 40 ¶ 63.) This allegation falls far short of an allegation that Kuhn either intended to inflict severe emotional distress or acted in conscious disregard of a high probability of severe emotional distress. For these

15

reasons, the Court dismisses Mr. Bordelais's claim for intentional infliction of emotional distress for failure to state a claim.

### E. Negligent Infliction of Emotional Distress

Mr. Bordelais also alleges a claim for "Negligently Inflicting [Mr. Bordelais] Emotional Tort," which the Court construes as a claim for negligent infliction of emotional distress. To plead a claim for negligent infliction of emotional distress, Mr. Bordelais "must allege the traditional elements of negligence: duty, breach, causation, and damages." *Schweihs*, 77 N.E.3d at 58. As the Court explained when discussing his malpractice claim, Mr. Bordelais has not pled that he was a patient of Kuhn or that Kuhn provided any therapy to him. Under Illinois law, therapists do not owe a duty of care to non-patient third parties in negligence claims. *See Doe v. McKay*, 700 N.E.2d at 1022 ("[T]he duty of care owed by a health care professional runs only to the patient, and not to third parties."). The Court therefore dismisses Mr. Bordelais's claim for negligent infliction of emotional distress because he fails to plead facts to support that Kuhn owed a duty of care to him.

### F. Conspiracy

Mr. Bordelais alleges that Kuhn conspired with Mrs. Bordelais "to cause prejudice to" him. (Dkt. 40 at 5.) For this claim, Mr. Bordelais invokes 720 ILCS 5/8-2, which, as Kuhn notes, is a criminal statute inapplicable in this civil case. (Dkts. 40 ¶ 53; 77 at 7.) The Court therefore construes his claim as one for civil conspiracy which is "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) (citation omitted). Although not clear, the Court interprets the Amended Complaint to plead an agreement between Mrs. Bordelais and Kuhn to provide therapy to his daughter, over Mr. Bordelais's objections, which he alleges was unlawful or caused unlawful actions by Kuhn, such as malpractice, defamation, and negligent and intentional infliction of emotional distress. The

16

Court, however, finds that Mr. Bordelais fails to plead sufficient facts to support that Kuhn violated any law through concerted action with Mrs. Bordelais. As the Court explains in other sections of this Order, Mr. Bordelais fails to plead sufficient facts to allow the Court to draw a reasonable inference that Kuhn was not authorized to provide therapy to Mr. Bordelais's daughter. The Court has dismissed all other claims that could support any concerted action between Mrs. Bordelais and Kuhn. Thus, Mr. Bordelais fails to state a claim for civil conspiracy by failing to plausibly plead any unlawful purpose or action taken through unlawful means. Mr. Bordelais's civil conspiracy claim is dismissed with prejudice.[11]

## II. Motion for Disclosure

Mr. Bordelais also has filed a motion for disclosure in which he requests that Kuhn produce records relating to his daughter's "current physical and mental condition, diagnosis, treatment needs, services provided, and services needed, including medication, if any" and "all other records relating to [Kuhn']s actions relating to [his daughter]," and "all records of communications between the respondents and Mrs. Valerie Bordelais." (Dkt. 51 at 2.) The Court denies Mr. Bordelais's motion and will not require Kuhn to produce these records. Mr. Bordelais had the right "to request and receive the limited information specifically allowed under [740 ILCS 110/]4(a)(3) about the child's current physical and mental condition, diagnosis, treatment needs, services provided, and services needed, including medication, if any," when his daughter was older than 12 years old and younger than 18. *In re Marriage of Wendy W.*, 202 N.E.3d at 1046. Since his daughter

---

[11] Mr. Bordelais also includes a claim under the doctrine of respondeat superior for Defendant Kuhn Counseling Center's liability for negligent acts or omissions by its employee, Defendant Maria E. J. Kuhn, within the course and scope of her employment. (Dkt. 40 ¶ 18.) "Under *respondeat superior*, an employer's vicarious liability extends to the negligent, willful, malicious or even criminal acts of its employees, when those acts are committed within the scope of employment." *Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009). The Court, however, has dismissed all claims against individual Defendant Kuhn, and thus there is no basis for respondeat superior liability for Defendant Kuhn Counseling Center. Mr. Bordelais's claim for respondeat superior is therefore dismissed.

17

is now an adult, however, 740 ILCS 110/4(a)(3) no longer applies and records of her medical or mental health treatment are confidential under 740 ILCS 110/3. Mr. Bordelais's daughter through counsel has informed the Court that she "specifically object[s] to disclosure of [her] medical or mental health treatment since any disclosure would violate [her] right of confidentiality under . . . 740 ILCS 110/3, and the federal privilege against disclosure of patient-psychotherapist communications recognized in *Redmond v. Jaffee*, 518 U.S. 1 (1996)." (Dkt. 83.) Since Mr. Bordelais's daughter is an adult and does not consent to the release of her medical or mental health records, the Court denies Mr. Bordelais's motion for disclosure with prejudice.

The Court further denies Mr. Bordelais's request for all records of communications between Kuhn and Mrs. Bordelais as moot. The Court has dismissed all claims in Mr. Bordelais's Amended Complaint, including those involving Mrs. Bordelais such as conspiracy and defamation.

### III. Motion to add Mrs. Bordelais as a Defendant

After Mr. Bordelais's daughter appeared through counsel at a motion hearing on August 15, 2023, for the limited purpose of confirming that she does not wish to participate in this lawsuit, Mr. Bordelais filed a motion to add Mrs. Bordelais as a party to the proceedings per Fed. R. Civ. P. 15(a) and 21. (Dkt. 92.) In his motion, he alleges that Kuhn was "colluding" with Mrs. Bordelais through her attorney, the same attorney who appeared on behalf of his daughter in the instant case. (Dkt. 92 at 1.) He further argues that given his Amended Complaint's allegations of collusion between Kuhn and Mrs. Bordelais, Mrs. Bordelais is a necessary party and should be added to this case. (*Id*. at 2.) On August 25, 2023, without leave of the Court, Mr. Bordelais improperly added Mrs. Bordelais as a party to the case in the caption on CM/ECF.

The Court has dismissed all of Mr. Bordelais's claims, including those relying on any actions by Mrs. Bordelais, for failure to state a claim. The Court therefore denies Mr. Bordelais's motion to add Mrs. Bordelais as a necessary party, which he requests over three and a half years after filing this action. The Court further strikes the improper addition of Mrs. Bordelais as a defendant from the case caption.

## Conclusion

For the foregoing reasons, the Court grants Kuhn's motion to dismiss in its entirety. Mr. Bordelais's Amended Complaint is dismissed with prejudice. Mr. Bordelais's motion for disclosure and motion to add Mrs. Bordelais as a party are denied with prejudice. Civil case terminated.

ENTERED:    9/12/23

*Nancy L. Maldonado*
Nancy L. Maldonado
United States District Court Judge